[No. 21824. Department One. October 4, 1929.]

H. C. TALBOTT et al., Appellants, v. WHITESTONE RECLAMATION DISTRICT, Respondent.[1]

[1]Reported in 281 Pac. 11.

*Wilson C. Gresham,* for appellants.

*P. D. Smith,* for respondent.

FULLERTON, J.—This controversy involves the validity of a clause in a contract entered into between the appellants Talbott and Conner, on the one part, and the respondent, Whitestone Reclamation District, on the other.

The contract reads as follows:

"This indenture, made this 7th day of April, A. D. 1923, by and between H. C. Talbott and Helen K. Talbott, husband and wife, and H. S. Conner, Jr., a bachelor, of Loomis, Washington, grantors, and the Whitestone Reclamation District (formerly the Whitestone-Horse Spring Coulee Irrigation District), an irrigation district organized and existing under the laws of the state of Washington, with the lands embraced within its boundaries situated entirely in Okanogan county, Washington, grantee, witnesseth:

"I.

"That the grantors for and in consideration of the sum of four thousand dollars ($4,000), to them in hand paid, the receipt whereof is hereby acknowledged, and in consideration of the conditions and covenants hereinafter contained, do hereby bargain, sell and convey to the grantee, all of their right, title and interest in and to the following described property situated in Okanogan county, state of Washington, to wit:

"(a) That part of government Lot 4 of Section 22, in Township 37 N. Range 25 East W. M., described as follows: Beginning at the northwest corner of said Lot 4, and thence running south 78 deg. 17 min. east along the north line of said Lot 4 a distance of 470 feet; thence south 11 deg. 43 min. west 530 feet, more or less, to the meander line of Sarsarpkin lake (commonly called Blue lake); thence westward along the meander line of said lake to the southwest corner of

said Lot 4; thence north along the west line of said Lot 4 to the northwest corner thereof and place of beginning, containing 2.09 acres, more or less, together with all water rights appurtenant thereto or in any manner connected therewith:

"(b) Also, all of government Lot 3 of Section 21 in said township and range, excepting a strip of land 15 feet in width along the west side of said Lot 3, for a roadway, the said Lot 3 containing 15.95 acres, more or less, according to the United States government survey thereof, together with all water rights appurtenant thereto or in any manner connected therewith:

"(c) Also, a right of way for a ditch, flume, pipe line or either, or all of them, from the west line of Moses Agreement Allotment No. 1, to the west side of the property hereinabove described:

"(d) A right of way, with full right of ingress and egress, for a water ditch, canal, flume, pipe or other conduit, across Lots 5 in Section 35, 6 in Section 25 and 2 in Section 26, Township 38 North, Range 25 East W. M., said lots being portions of that tract commonly known as Moses Agreement Allotment No. 3; said right of way to be of such width as is necessary for the proper construction, operation, maintenance and repair of the water conduit thereon, and running across the said lots northeasterly from the southern boundary thereof to the northern boundary thereof, substantially as now located on said lots.

"II.

"(a) The grantee recognizes and acknowledges the prior right of the land in said Moses Agreement Allotment No. 3, and the prior right of the owners of said land, to the natural flow of the waters of Sinlahekin creek during the irrigation season of each year to the full extent and use of the soil, and the right to sufficient flow of said waters during all seasons of the year for stock and domestic purposes.

"(b) The grantee covenants and agrees to convey through its canal from Blue lake, located as specified in Section 1, sub-division (d) hereof, and to deliver, at outlets in its canal bank upon said Moses Agreement Allotment No. 3, perpetually during the irrigation sea-

son of each year, and at such other times as its said canal shall be used in conveying water for district purposes (interruption by the act of God, break in the canal or through other accident to its canal works, being excepted) such waters of Sinlahekin creek as the grantors are or may be entitled to receive from said creek for irrigation, stock and domestic uses, and said outlets to be located at proper and reasonable points on said canal bank for the diversion of water to the lands of grantors by gravity flow; Provided, that the grantors, at their election, shall have the privilege of conveying and delivering through the channel of said creek to the head of their ditch, which now runs from said creek to their lands in said Allotment No. 3, such part of the waters to which they are or may be entitled as aforesaid, as they shall deem necessary for their use in the irrigation of their lands in said allotment which lie west of said Sinlahekin creek, and for the stock and domestic uses, but any part of said waters, or the whole thereof, which shall not be conveyed and delivered through the channel of said creek shall be conveyed in grantee's canal as above covenanted and agreed.

"(c) And the grantee further covenants and agrees to deliver, at the outlets in its canal bank as above specified, additional water from the grantee's water stored in Blue lake, not exceeding the amount of water necessary and proper to supplement the grantors' prior right to the water above referred to, whereby not more than one hundred sixty (160) acres of land in said Moses Agreement Allotment No. 3 may be irrigated and actually cropped, that is to say, such additional water shall be an amount sufficient to irrigate one hundred and sixty acres of land in said allotment, which shall be actually under cultivation, less any amount of water which grantors are or may be entitled to receive therefor under said prior right; Provided, however, that for such additional water conveyed through the grantee's conduit and delivered upon said Allotment No. 3, the grantors and owners of the land shall pay to the grantee district, in cash, annually at the close of the grantee's irrigation season, twenty cents (20c) per acre foot of such water so delivered;

and provided further, that failure to pay for such additional water to be so delivered during each year shall release the grantee from further obligation to deliver such additional water to grantors' lands until such arrears shall be paid in full, but shall not affect the right of way or any other right, title or interest covered by this entire agreement.

"III.

"The grantee agrees to construct and maintain three proper and adequate farm road crossings over its water conduit at places on said Allotment No. 3 designated by the grantors.

"IV.

"To have and to hold the above described property, rights, and privileges, and interests therein unto the said grantee, its successors and assigns forever, free from all liens of every nature, contracted or suffered to be created by said grantors except as hereinabove specifically set out; Provided, that said property and property rights were granted for irrigation district purposes, and part of the consideration for said grant is the carrying of water to grantors as above agreed, and if the district project is abandoned or if the grantee ceases to use for district purposes the property and property rights aforesaid, the title hereof shall revert to the grantors."

It may aid to an understanding of the question involved to state something of the situation and the inducement which led to the execution of the contract. The respondent, as recited in the contract, is an irrigation district organized pursuant to the laws of the state. The lands comprising the district lie to the north of lands and properties described in the contract. Blue lake lies south of the properties, and is some ten miles distant from the lands comprising the irrigation district. It is surrounded by highlands, with its opening towards the north, and is capable of being formed, by a dam across the outlet, into a considerable storage basin. Sinlahekin creek has its

source in the mountains to the west of Blue lake, and flows in an easterly direction to the vicinity of the lake, from whence it turns and flows in a direction slightly east of north. From a point near its change in course, it flows through a valley ranging in width from a half to three-quarters of a mile. The land in the valley is arid land for its greater part, incapable of producing crops without irrigation. The lands described in subdivisions (a) and (b) of paragraph I of the contract, lie on the northerly margin of the lake, and to raise the level of the waters of the lake, it is necessary to overflow them. The appellants were the owners of a right of way for a ditch, flume or pipe line, by which water could be conveyed from Sinlahekin creek to the lands lying on the margin of the lake, and this is the property conveyed by subdivision (c) of paragraph I of the contract.

The land described in the contract as "Moses Agreement Allotment number 3," comprises 646.12 acres, and is also owned, with the exception of a small part, by the appellants. Sinlahekin creek flows approximately through the center of the tract, and a part of the land comprising the allotment is capable of being irrigated with water taken directly from the creek. All of the tillable land in the allotment was not so capable, but whether this was because of the elevation of the land, or whether because the flow of the creek was limited during the irrigating season, does not clearly appear in the record. It is inferable, however, that both reasons intervened. Prior to the institution of the negotiations which culminated in the contract with the respondent, the appellants had instituted proceedings to acquire the right to store water in Blue lake, with the ultimate purpose of carrying it to the land by means of a canal or ditch to supply the deficiency in quantity. These proceedings were, of course, abandoned after the execution of the contract.

During the irrigating season of 1926, the respondent refused to comply with that part of the contract embodied in subdivision (c) of paragraph II of the contract, and the present action was begun to compel them so to do. The trial court, on the trial of the action after issue joined, decreed that the subdivision of the contract last mentioned "is void and the same is hereby canceled and held for naught," and further decreed that the appellants take nothing by their action.

The statute relating to the organization and government of irrigation districts provides (Rem. Comp. Stat., § 7428) that the board of directors of such districts shall have authority to sell the use of water developed by the district for delivery to occupants of land adjacent to the district at such prices and on such terms as they deem best, with the limitation that

". . . no water . . . shall be furnished for use outside of said district until all demands and requirements for water . . . for use in said district are furnished and supplied by said district: . . ."

The evidence disclosed that, in this instance, the water supply acquired by the district was insufficient for its own needs; that, in fact, it had to curtail the boundaries of the district to make the water supply even measurably meet its requirements. It was on the statute above cited, and on the fact that the district does not have a surplus supply of water, that the trial court rested its conclusion that the part of the contract by which the district agreed to supply water to the appellants was invalid. But we think this a mistaken view of the statute. Manifestly, we think, it was intended to apply to a situation where the district had developed its water supply and had a surplus quantity of water over and above its needs. But this is far from the situation here presented. Here, the district was seeking to obtain a supply of water for its needs.

In order to accomplish that purpose, it purchased from the appellants certain lands, certain water rights, and certain rights of way for water conduits through lands owned by the appellants, and, as a part consideration for the property it acquired by the purchase, agreed to furnish the appellants with a stated quantity of water at a stated price. The contract was one which the district was empowered to make (Ib. § 7429). Indeed, it would seem that the rights of the appellants could not have been acquired by any other means than by a voluntary contract of purchase (Ib. § 7354).

But, perhaps, it is unnecessary to inquire whether the right of condemnation existed. As we say, it was within the powers of the district to acquire the property of the appellants by a voluntary purchase, and under no principle of law or equity can they retain the property acquired and, at the same time, refuse to comply with the agreement under which it was acquired.

Nor are the appellants relegated to an action in damages as for a breach of the contract. The district is able to comply with the contract, and the appellants may have specific performance, even though the remedy may deprive the district of a needed supply of water. To say otherwise is to say that the district's rights under the contract are paramount. But such is not the rule. Parties to a voluntary contract have equal rights thereunder, and this is true though one of the parties may be exercising powers granted to it by the state.

There are other questions discussed in the briefs which we conclude are not pertinent to the record before us, and we shall not further notice them.

The decree of the trial court is reversed, with instructions to enter a decree in accordance with the rights of the parties as determined in. this opinion.

TOLMAN, FRENCH, BEALS, and HOLCOMB, JJ., concur.